61 | 91<br>
81 | 224<br>
61 | 91<br>
83 | 270

---

## T. J. & G. W. NEWMAN v. B. F. DODSON.

(Case No. 1654.)

1. NOTICE TO TAKE DEPOSITIONS — PRACTICE.— A defective notice in regard to the taking of depositions served upon one of two defendants is cured by a proper and legal notice served upon his co-defendant, who is the attorney of record representing both defendants.

2. EVIDENCE.— In an action to recover damages for a trespass *vi et armis*, the declarations of the plaintiff, made to a medical man in answer to inquiries as to his physical condition after the alleged injury, are admissible in evidence, though the physician may not have been employed as such. So, also, are his declarations, under like circumstances, as to his sensations and sufferings from the violence inflicted.

3. SAME.— But the declarations of the injured party, made under like circumstances, but not at the time of receiving the injury, as to the person by whom and the weapon with which the injury was inflicted, would be inadmissible in evidence.

4. SAME.— The opinion of a physician is admissible in evidence as to the condition of another's health, whether that opinion is in part founded on the declarations of the party or not.

5. TRIAL BY JURY.— An objection that a juror was not summoned by a sworn officer comes too late after verdict. R. S., 3074–3079, and Schuster *v.* La Londe, 57 Tex., 28.

6. TRANSCRIPT.— A change in a statement of facts after it has been signed by the trial judge, made without authority, if made by one seeking a revision of the judgment, would be visited by the penalty of at least having the paper stricken from the record.

7. EVIDENCE.— See opinion for facts under which the introduction in evidence of the papers of another cause, though irrelevant to the main issue, was not error when introduced in rebuttal to evidence already allowed to be introduced by the adversary.

8. CHARGE OF COURT.— While the practice of district judges, sometimes indulged in, of charging in suits for damages that the jury might find, if at all, for plaintiff an amount not to exceed the sum claimed, has been disapproved by the supreme court, it has never held that this alone would constitute cause for reversing a judgment. It certainly would not when the result was a verdict greatly less than the amount claimed, and not more than the evidence seemed to authorize.

9. CHARGE ON WEIGHT OF EVIDENCE.— It is not a charge on the weight of evidence, in a suit to recover damages, for the trial judge to enumerate the facts which the jury might consider in estimating damages, when the charge does not assume their existence, but instructs the jury that they must look to the evidence for them. Nor was it error in the court to tell the jury that if the injuries complained of were proved in this case, the damage resulting from them might be determined from the general knowledge and experience of the jury.

10. PLEADING.— A lost pleading cannot be substituted by mere amendment, without affidavit or certificate as to the lost paper. Any other rule would make the statute on the subject a nullity.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

On the 19th day of January, 1875, B. F. Dodson instituted this suit in the district court of Washington county against appellants T. J. & G. W. Newman for $20,000 damages, for an assault alleged to have been committed by them. At the September term, 1875, T. J. & G. W. Newman answered by general and special demurrers,

by general denial and special answer. Trial by jury, which resulted in a verdict and judgment for plaintiff for $1,500 actual damages against defendants jointly.

The injury resulted over a bale of cotton claimed by the plaintiff, and also by the defendant. The cotton was one of five bales grown by tenants in the year 1874, on a farm which had belonged to Mrs. Mary Ann Schrimpff, deceased, who died in 1873. By her will, she had left her entire estate to her daughter and only child, afterward the wife of the plaintiff Dodson, and constituted T. J. Newman, who was her brother, executor and testamentary guardian of her daughter, who was a minor. The will, which was drawn by T. J. Newman, provided, among other things, that he, as independent executor without bond, should have the management and control of the property until the daughter should arrive at twenty-one years of age, and that in case she should die without issue, or before she became of full age, the whole estate should pass to the executor. In the spring of 1874, Newman rented out the farm to tenants for a part of the cotton and corn to be grown on the place.

In July, 1874, Dodson married the daughter of Mrs. Schrimpff, and in the fall of that year, about November 1st, they took possession of the farm, occupying it as their home. Newman had at that time received all the rent cotton except five bales, which were delivered by the tenants to Dodson, who locked them up in the smokehouse.

A controversy thereupon arose between the parties, Newman claiming the cotton as executor under the will of Mrs. Schrimpff, and Dodson in right of his wife as devisee and legatee. Newman claimed that there were debts of the estate remaining unpaid. Dodson insisted that Newman had squandered the estate without paying the debts; that he then had funds in his hands more than sufficient to pay the debts, etc.

On Sunday, January 3, 1875, the day before the difficulty, the defendants went to the house of the plaintiff, and Tom Newman (according to plaintiff's evidence) told him he was coming after the cotton. Plaintiff told him he need not come, for he could not get it. Newman said he was going to have it anyhow, and the defendants rode off. The defendants' version was that Dodson consented that Tom Newman should take the cotton and sell it, and pay the debts. On the next morning, January 4, 1875, Tom Newman, Alfred Harbour and Alvin McNiel went to Dodson's house during his absence, and, against the entreaties of his wife, who was alone,

broke open the smoke-house, took out two of the bales of cotton,. loaded them upon a wagon, and drove off with them.

Dodson, on his return home, followed the wagon, with his wife, and threw off one of the bales of cotton. After a time, George Newman returned, armed with a pistol, to where Dodson, and his wife were sitting on the bale of cotton. Tom Newman then seized Dodson by the collar, and cursed him, while George Newman struck him over the head with a pistol, from which he was confined to his bed for several weeks, and from the effects of which his capacity for labor has been much impaired.

The court, among other things, charged the jury as follows:

"If you find for the plaintiff under the instructions heretofore given, you will allow him such damages, not exceeding the amount claimed in the petition, as seem to you to be right and proper under all the facts and circumstances in evidence. In estimating the damages you have a right to consider the bodily and mental pain (if any) endured by plaintiff, and his diminished capacity for labor resulting directly from defendants' wrongful act, if the evidence shows these circumstances to exist. You may also take into consideration the surgical and medical bills which he has incurred or paid, and the probable future injury, if any, that will result to him. You may also consider the injuries to his feelings by reason of any insult and indignity inflicted upon his person. It was not necessary to prove by witnesses the amount of damages resulting from personal injuries, but these are to be determined by you from your general knowledge and experience.

"The damages above spoken of are known as actual damages. If malice has been shown by the evidence, or may be reasonably inferred from the conduct of defendants as shown in evidence, you may in your discretion give exemplary damages by way of punishing the defendants, and for the purpose of setting a wholesome example to others. If you find both actual and exemplary damages, you will find separately in your verdict the amount of each, stating what amount is actual and what amount is exemplary damages.

"The term malice used in this charge does not necessarily imply hatred or ill-will, but any improper or unworthy motive, and it may be inferred from brutality of conduct, wantonness or recklessness."

The court also charged the jury in substance: If the difficulty occurred about the possession of cotton belonging to the estate of M. A. Schrimpff, and T. J. Newman was executor of her estate and in possession of the cotton, and there were unpaid debts due by

said estate, then Newman had the right to possession of the cotton; and if plaintiff attempted to take the cotton by force and was injured in the attempt, he made himself responsible for the consequences, and cannot recover in this suit unless defendant used more violence than was necessary under the circumstances.

Other features of the case appear in the opinion.

· *Breedlove & Ewing* and *T. J. Newman*, for appellants.

WILLIE, CHIEF JUSTICE.—The first and second assignments of error are not well taken.

Whatever defect there may have been in the notice served upon George W. Newman was cured by service of a proper and legal notice as to the taking of the depositions upon T. J. Newman, attorney of record for both defendants, and who, as such attorney, filed cross-interrogatories to the witnesses.

The answer of the witness Richardson to the sixth interrogatory propounded to him, and of the witness Lipscomb to the seventh interrogatory to him, were legal so far as they gave the statements of Dodson as to his health and physical condition. Such expressions by a plaintiff in answer to inquiries made by physicians, as to what he has suffered by reason of an assault, are held to be competent evidence in actions of this character. If made to medical men, they are of greater weight as evidence than if made to other persons, but they are admissible in either case. Rogers *v.* Crain, 30 Tex., 284.

Under this rule the expressions made to Dr. Richardson as to the suffering and sensations of Dodson, made by Dodson himself, were admissible, whether he was 'called in to visit him professionally or not. The proof, however, that he was thus called in and did give his services to the plaintiff as a physician was ample. It could make no difference whether he rendered these services with or without compensation, or whether he was called in immediately or some time after the injury was received. It was only necessary that the pain or bodily condition complained of was contemporaneous with the declarations made by the plaintiff. This was sufficiently established by the proof.

We think that the statements made by Dodson to these physicians, as to his having received the wound by being struck with a pistol by Geo. W. Dodson, was hearsay and inadmissible. However, the fact that the wound was thus caused was fully established by the wit-

nesses on both sides, including the defendants themselves, and was not a disputed fact in the case.

It is unnecessary to add that the opinion of medical men is evidence upon the state of a person's health, whether or not that opinion be partly founded upon the answer of a patient to inquiries made by him. Rogers v. Crain, *supra*.

The fifth assignment of error draws a distinction between the expenses incurred by the plaintiff in consequence of *his sickness* and those incurred on account of *his disability from his wound*. We think this rather too technical to require further notice, especially as it is evident from the testimony of the witness Lipscomb that he gave these terms the same meaning.

It is not necessary to consider the sixth, twelfth and thirteenth assignments of error, as they raise questions upon the subject of vindictive damages, whereas no such damages were found against the defendants by the verdict of the jury.

We do not think that the court erred as stated in the seventh assignment of error, for the reason that the objection to the jurors summoned by the sheriff came too late after verdict. The Revised Statutes contemplate that all such objections should be made before the cause proceeds to trial; and it is the duty of the parties to the cause to inform themselves as to such facts so as to make the objection in proper time. See R. S., arts. 3074, 3076, 3079; Schuster v. La Londe, 57 Tex., 29.

The eighth assignment of error raises a question as to the admissibility of the pleadings, judgment and other papers in the cause of Mary R. and B. F. Dodson v. T. J. Newman, previously determined in the district court (in which the present suit was tried) and affirmed on appeal in this court. There is some doubt raised by a motion filed by the appellee to strike out the statement of facts found in the present record, because, as he alleges, this evidence was introduced by the defendants themselves and not by the plaintiff. This motion is supported by affidavits to the effect that the statement of facts, as originally made out by the district judge, showed that the defendants below offered the above papers in evidence, but that one of the appellants had erased the word "defendants" and interlined above it the word "plaintiff," so as to make it appear that the evidence was offered by the appellee. This is not denied by the appellant T. J. Newman, but in excuse he says that the statement as thus amended speaks the truth, and that it was an obvious clerical error that he sought to correct in making the change. This view is supported by the fact that the objection to the evidence was made by

the defendants, and it would be an inconsistency for the defendants to attempt to exclude their own testimony. On the other hand, the motion is sustained by the statement of the district judge as to what occurred at the trial.

Fortunately in this conflict of statement it is not necessary for us to decide upon the merits of the motion, as, in the view we take of the evidence, the question as to the party by whom it was introduced is of no importance. We will say, however, that whilst the present change in the statement of facts was not probably made with any improper design, it is a grave offense to tamper in any manner whatever with the records to be brought to this court for revision. In a proper case an alteration in the statement of facts, made without authority, after the same had received the sanction of the judge, would be visited with the penalty of at least having that paper stricken from the record.

Previous to the introduction of the evidence complained of, the defendants had introduced papers to show that one of them, T. J. Newman, had been named as independent executor in the will of Mrs. M. A. Schrimpff; that he had qualified as such; that he was entitled to control the property of her estate till her sole legatee and devisee was of age, etc. These papers were introduced for the purpose of establishing the right of said Newman to take possession of the cotton about which the difficulty occurred, which brought about this suit, he claiming that it belonged to her estate.

The papers objected to tended to show, in rebuttal, that whilst the documents put in evidence might apparently show such right, yet the courts of the country, whose decisions were final in the matter, in construing them, had held that they gave him no authority to possess and control such property at the time he forcibly took it from the possession of the plaintiff, to whose wife the courts had awarded it. The testimony of the defendants on this subject having gone to the jury, it was not error to allow the plaintiff to rebut it in the manner stated, however irrelevant the papers might otherwise have been.

In answer to the ninth, tenth and eleventh assignments of error, it is sufficient to say that the charges asked by the defendants and refused by the court, so far as they were true statements of the law of the case, were sufficiently given in the instructions in chief submitted to the jury. These instructions were as favorable to the appellants as the law would justify the court in making them, and were in the main a correct exposition of the law, assuming that the assault and battery occurred in resisting an attempt of

the plaintiff to take the cotton from the possession of the defendants.

But it seems that the evidence fully shows that at the time the difficulty occurred between the parties the plaintiff and not the defendants was in possession of the bale of cotton about which the assault happened. In that event the court could not properly charge the jury as to the right of a person in possession of property to resist by force an attempt of another party to take it from him.

What we have just said disposes of the fifteenth and sixteenth assignments of error taken to the general charge of the court on the ground that they do not proceed upon the theory that plaintiff, at the time of the difficulty, was committing an unlawful trespass upon property in possession of T. J. Newman. As we have stated, the proof abundantly shows that the assault and battery transpired in an attempt to retake from the plaintiff the cotton which he had previously taken from the defendants.

As to the next assignment it may be said that whilst this court has reprobated the practice of district judges in charging juries that they might find, if at all, for plaintiff an amount not to exceed the sum claimed in the petition, it has never authoritatively held that this alone would be sufficient to reverse a judgment.

In this case the judge did not give any undue prominence to the amount claimed, but stated the rule of law in such manner as to influence them as little as was consistent with his duty in finding their verdict. The effect of this charge as against the defendants could not have been great, as the jury found greatly less than the amount claimed, and not more than they were justified in finding under the evidence.

The court did not charge on the weight of evidence, but merely enumerated the facts which might be taken into consideration in estimating damages, cautiously telling them that all such facts must be shown by the evidence to justify the jury in making them the basis of their verdict.

These enumerated facts were all proper subjects for actual damages, and the court correctly said, in effect, that the injuries being proved, the amount of damage resulting from them might be determined from the general knowledge and experience of the jury.

The three next assignments of error are not well taken, for there is abundant evidence to show that T. J. Newman committed an assault upon the plaintiff.

There was sufficient proof without detailing it to warrant a verdict for $1,500 actual damages, and the finding is not excessive.

For reasons heretofore given, the second assignment of error cannot be sustained; for the weight of evidence was to the effect that Dodson was in possession of the cotton at the time of the assault. Even if the proof had been otherwise, this court cannot say, in opposition to the finding of the jury, that the deadly assault made upon Dodson was not the use of more than necessary force to repel so slight an attack as he made upon the defendant, T. J. Newman, according to the latter's own witnesses.

The last assignment is too general to require consideration.

As to the point made by appellee upon his cross-appeal, it is sufficient to say that we hardly think it was the contemplation of our present rules that a lost pleading might be supplied by a mere amendment. These rules require that all amendments, with the exception of trial amendments, shall be substituted for some previous pleading. To determine whether or not it is such substitute, it is necessary that the court should have access to the former pleading. Moreover, if pleadings can be supplied by mere amendment, without affidavit or certificate as to the lost paper, the statute on that subject will be in effect a nullity. What was done in this case amounted to a substitution, without any proof that the new petitions were in substance the same as the former, with something added which was before left out; and it is not the theory of the law upon this subject that the mere statements of the pleader shall serve in place of what the statute requires to be put in under the sanctity of an oath. If so, he may, under the guise of an amendment, state any allegations he may choose, and thus bring into court a new paper unauthorized by the one which was destroyed.

The costs of the substitution were, under the facts, in the discretion of the court, and we cannot say that it was improperly exercised. We see no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered February 5, 1884.]