## J. M. Drinkard v. J. Barnett.

Decided June 16, 1897.

**Homestead Pre-emption—Conflicting Claims—Settlement—Patent.**

Between rival claimants to the same land as homestead donation, the title of one who had, before patent issued, actually settled upon and acquired an equity in it, is superior to that of one who has obtained a patent by making proof of settlement and occupancy for the required time, but without actual settlement. The ministerial act of issuing patent could not defeat the superior pre-existing right.

Appeal from McCulloch. Tried below before Hon. J. O. Woodward.

*Walter Anderson,* for appellant.—1. The law authorizes and requires the Commissioner to pass judgment upon all matters prerequisite to the issuance of patents and to determine whether the facts exist which authorize the issuance of patent as well, and said Commissioner having exercised his jurisdiction in this matter, his judgment can not be attacked by one occupying the position of the appellee. The patents having been issued by competent authority are conclusive of the rights of these parties. Decourt v. Sproul, 66 Texas, 368; Styles v. Gray, 10 Texas, 506; Todd v. Fisher, 26 Texas, 239; Burkett v. Scarborough, 59 Texas, 498.

2. It is a general rule of law that authority to hear and determine certain matters having been vested exclusively in a special tribunal, the decisions of that tribunal in matters coming properly before it are final and conclusive, and not subject to review in another tribunal. The Commissioner of the General Land Office is vested with jurisdiction to pass judgment on the proof offered as prerequisite to issuance of the patents, as well as upon the merits of the claims of the contestants. The evidence of the appellee's claim having been on file in the General Land Office, along with the proof offered by appellant for patents, and the Commissioner having passed judgment on the merits of their respective claims and issued patents to appellant, the appellee is concluded. Decourt v. Sproul, 66 Texas, 368; Burkett v. Scarborough, 59 Texas, 497.

*Goodwin, Grinnan & Shropshire,* for appellee.

FISHER, Chief Justice.—The following statement of the case is taken from the appellant's brief:

"On October 19, 1895, appellant brought suit in the District Court of McCulloch County, Texas, against appellee in the ordinary form of trespass to try title to 160 acres of land in McCulloch County, Texas, being two tracts of 80 acres each, both tracts having been patented to appellant on July 27, 1895—one of them patented to appellant as assignee of A. G. Mitchell, who had acquired the same under the homestead donation laws of Texas, the other tract having been patented to appellant as assignee of Moses Watson, who also had acquired it under the homestead donation laws of Texas.

"The two tracts are contiguous to each other. A. G. Mitchell made

application for one of the tracts and had it surveyed in 1888, and Moses Watson made application and had the other surveyed at the same time.

"The patents were issued to appellant as assignee of said Mitchell and Watson by virtue of affidavits or proof of occupancy made before W. F. Roberts, notary public, McCulloch County, Texas, under an Act for the benefit of actual occupants of the public lands, approved May 26, 1873. The said affidavits were made by Mitchell and Watson with supporting compurgators.

"Appellee answered, setting up plea of not guilty; also pleading in reconvention, that in June, 1888, A. G. Mitchell filed with the surveyor of McCulloch County, Texas, application for survey as a homestead donation of 80 acres of the land in suit, in which said Mitchell swore that he claimed the land for himself in good faith, under the laws regulating homestead donations, and that he was without a home; that he was actually settled on said land, and believed it to be vacant; averring that the statements in said application and oath were false; that land was surveyed for Mitchell as a homestead donation in July, 1888, and field notes returned in proper time, etc.; and defendant made same allegations relative to the 80 acres taken up by Watson; that they were both single men, and that on November 5, 1890, they were single; and that on said date Watson sold and transferred his claim to Mitchell, said Mitchell still owning the 80 acres taken up by himself; and that on November 5, 1890, said Mitchell sold and conveyed both tracts to appellant Drinkard, which were patented to Drinkard as aforesaid; that at the time of said purchase Drinkard was the head of a family and owned other lands in Texas; that on July 9, 1895, A. G. Mitchell, supported by John Mitchell and Moses Watson, made affidavit or proof of occupancy of 80 acres of said land, in which they swore that said A. G. Mitchell and his assignee Drinkard had occupied and improved the Mitchell 80 acres for three consecutive years, beginning June 11, 1888, and alleging the falsity of the affidavit; also same allegations as to Watson 80 acres, except that proof was made by Watson and Alex and Tom Mitchell.

"Defendant also alleges that on July 1, 1895, he was a married man and was without a homestead, and so remained until June 3, 1895, when he filed on the 160 acres covered by appellant's patents, making the necessary proof under the laws regulating homestead donations, which application was recorded in the surveyor's office June 3, 1895; that he had land surveyed in proper time and field notes recorded, and sent them to the General Land Office with his application, and he prayed for judgment and for cancelation of the patents.

"Appellants filed first supplemental petition on April 20, 1896, consisting of exceptions, that answer set up matters in which defendants could not complain, and of which the State alone could complain after patent issued, and that answer sets up and complains of matters already passed upon by the Commissioner of the General Land Office before issuing patent, whose duty in law it was to pass on such matters; also setting up general denial, and setting up that the lands were appropriated by

Mitchell and Watson as homestead donations, and that the patents were issued to appellant as assignee upon full and proper proof made and presented to the Commissioner of the General Land Office, whose duty it was to determine or judge of such matters and all pre-existing matters and rights prior to issuing the patents, and that the Commissioner having passed on the same, his acts were final; that proof of settlement, occupancy, etc., were necessary to be made before patents could issue, and that such proof had been made and passed on by the proper authority, etc.

"Jury was waived and cause submitted to the court, who gave judgment for appellee, and appellants excepted and gave notice of appeal to this court, and ask that the cause be reversed and here rendered."

It is unnecessary for us to set out or find the facts showing the steps taken by the appellant and those under whom he claims to acquire the land, as he is entitled to recover unless it is shown that he and his vendors did not reside upon and occupy the land in the manner and for the time required by law. The facts show that appellee is of the class of persons entitled to a pre-emption or homestead donation, and that he, before the issuance of the patents, took the steps required by law to acquire the land as a homestead donation or pre-emption. The real controversy in the case is whether the vendees of the appellant or the appellant resided upon the land and so occupied it for the time required by law as would entitle them to it. There was evidence both ways upon this question, and we find that the judgment of the court is warranted by the facts. If the appellant nor his vendees actually settled upon and resided on the land, the appellee, seeking a homestead, could take steps to acquire it at any time before the patent issued, and if he acquired an equity in the land by virtue of the steps taken, the subsequent issuance of the patents to appellant, based upon false affidavits of settlement and occupancy, would not extinguish his right. The issuance of the patent was a ministerial act, and if illegally or wrongfully issued it would not defeat a pre-existing right in appellee to the land. Calvert v. Ramsey, 59 Texas, 490.

The judgment is affirmed.

*Affirmed.*